*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 26, 2019

**BY ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:   *United States v. Lamar Griffin, a/k/a "Louch,"* **18 Cr. 454 (KPF)**

Dear Judge Failla:

      The Government submits this letter in advance of the sentencing of Lamar Griffin (the "defendant"), and in response to the defendant's sentencing submission, dated December 24, 2019 ("Def.'s Mem."). As explained below, the Government respectfully submits that a sentence within the range of 78 to 97 months' imprisonment, as called for by the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), should be imposed in this case.

    **I.**    **Offense Conduct**

      For more than a decade, the defendant has sold crack cocaine in and around the Lambert Houses in the Bronx, New York. *See* United States Probation Office's Presentence Investigation Report ("PSR") ¶¶ 24-26. During that time, he worked with others—including co-defendant Jonathan Padilla—to sell his product to addicts throughout the community. Indeed, between just March and May 2017, the defendant was involved in approximately five crack sales to a confidential informant and two to an undercover police officer, including one in which he met with the UC and then directed Padilla to complete the transaction. *Id.* ¶ 25.

      Between 2005 and his arrest in this case, the defendant was arrested at least *23 total times*, ten of which were for criminal possession or sale of a controlled substance (nine times in New York City and once in Harrisburg, Pennsylvania). *Id.* ¶ 26, , 63, 66-67, 70, 72, 76. These arrests resulted in five drug convictions: (1) a 2006 youthful offender adjudication for criminal sale, for which he was sentenced to five years' probation and then resentenced to one year in prison, *see id.* ¶ 63; (2) a 2009 conviction for criminal possession, for which he was sentenced to 30 days' imprisonment, *see id.* ¶ 70; (3 and 4) two 2010 convictions for criminal sale, for which he was sentenced to three year's imprisonment, *see id.* ¶¶ 66-67; and (5) a November 2016 conviction for criminal possession, for which he was sentenced to time served, *see id.* ¶ 72. Three of these convictions were based on the defendant's sale of drugs to an undercover member of law enforcement, *see id.* ¶¶ 63, 66-67; one stemmed from an incident in which police observed him handing a bag of drugs to another person, *see id.* ¶ 70; and the last stemmed from

December 26, 2019
Page 2

the execution of a search warrant at the defendant's residence, during which police seized three grams of crack cocaine, approximately 187 bags of K2 synthetic marijuana, and various drug paraphernalia, *see id.* ¶ 72. All of these arrests and convictions relate to the same ongoing course of conduct—that is, the defendant's near-constant drug dealing in the same community since he was 16 years old. (He was 28 at the time of his federal arrest.)

During the same time period, the defendant sustained five other, unrelated convictions: (1) a 2007 conviction for third-degree assault, a misdemeanor, for which he was sentenced to 30 days' imprisonment, *see id.* ¶ 64; (2) a 2007 conviction for second-degree assault, a felony, for which he was sentenced to one year in prison; *see id.* ¶ 65; (3) a 2009 conviction for criminal trespass, for which he was sentenced to a conditional discharge, *see id.* ¶ 68; (4) a 2009 conviction for obtaining transportation without payment, for which he was sentenced to a conditional discharge, *see id.* ¶ 69; and (5) a 2014 conviction for disorderly conduct, for which he was sentenced to 15 days' imprisonment, *see id.* ¶ 71. The assault convictions stemmed from an incident in which the defendant acted with others to physically attack a victim and steal the victim's cellphone, *see id.* ¶ 64; and another in which he cut and slashed a victim with a bladed weapon, *see id.* ¶ 65. At the time of his arrest for trespass in 2009, the defendant was found to be in possession of a gravity knife. *See id.* ¶ 68. The defendant has also been the subject of orders of protection from his ex-girlfriend and son. *See id.* ¶ 81.

## II. The Defendant's Plea and Applicable Guidelines Range

Pursuant to an agreement with the Government, the defendant pled guilty on October 17, 2019, to one count of conspiring to distribute crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). PSR ¶ 4. In the plea agreement, the parties stipulated that the advisory Guidelines range was 78 to 97 months' imprisonment, based on an offense level of 27 and a Criminal History Category of II. *Id.* The Probation Office agrees with this calculation. *Id.* ¶¶ 49-74, 109.

## III. Discussion

### A. Applicable Law

Although *United States v. Booker*, 543 U.S. 220, 264 (2005), held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After performing that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the four legitimate purposes of sentencing, as set forth below, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statement by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

December 26, 2019
Page 3

guilty of similar conduct," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. Analysis

The Government respectfully submits that a sentence in the range of 78 to 97 months' imprisonment is appropriate in light of all of the sentencing factors set forth above, and would be sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

*First*, the defendant's significant criminal history and other personal characteristics weigh heavily in favor of a sentence within the Guidelines range. As noted above, since 2005, the defendant has been arrested at least 23 times, many of which were for crimes relating to the distribution of crack cocaine. The defendant has sustained five convictions for his involvement in the same course of ongoing, persistent criminal conduct that underlies the charges in this case. His prior convictions have resulted in sentences totaling more than four years' imprisonment. In addition, the defendant was also previously sentenced to one year in prison for cutting someone with a knife and 30 days' imprisonment for participating in a gang robbery. He was later arrested with a knife. None of these law enforcement contacts or significant prison sentences have deterred the defendant from further criminal activity.

The timeline of the defendant's most recent conviction, offense conduct, and arrest are especially telling and egregious. Specifically, the defendant was arrested in November 2016 following the execution of a search warrant at his apartment during which police seized several grams of crack cocaine and about 187 bags of K2 synthetic marijuana. Five days later, the defendant pled guilty and was sentenced to time served. Despite that very recent arrest and conviction, the defendant participated in seven crack sales—five to a confidential informant and two to an undercover officer—within the next four to six months (March to May 2017). Then, in February 2018, the defendant was arrested again in Pennsylvania on charges that he possessed

December 26, 2019
Page 4

crack cocaine.  The defendant was 27 and 28 years old at the time, and his behavior demonstrates a gross lack of respect for the law.

*Second*, the nature and circumstances of the offense weigh in favor of such a sentence. As the Court is well aware, the drug trade throughout this city causes immeasurable harm to addicts, their families, and average citizens who are victimized by the crimes that users commit in order to continue feeding their habits.  For years, the defendant routinely sold poison to other people for them to ingest, and the aggregate weight of drugs that the defendant sold and conspired to sell is extremely significant.  In addition, certain communities in the Bronx are especially hard hit by secondary effects of drug activity; and in recent years, the Lambert Houses and greater Tremont neighborhood have seen countless murders, non-fatal shootings, stabbings, robberies, assaults, and other acts of violence, all stemming from battles over drug territory and other drug-related conflicts.  The defendant's continuous participation in that market contributed in material ways to the environment where violent actors could thrive, prosper, and inflict even greater harms on the rest of the community.

*Third*, a sentence within the Guidelines range is needed to adequately punish the defendant and to demonstrate the seriousness of his conduct, including his years of supporting himself through crimes, which has harmed the citizens of the Lambert Houses and broader Tremont community.  Such a sentence would also promote respect for the law and serve to deter the defendant from future crimes—a goal that was not accomplished by any of the defendant's prior sentences, including his years in prison or the time served sentence he received just four months before selling crack to a confidential informant.  Looking beyond the defendant himself, in a case like this, where the defendant was known to be a member of a large conspiracy that was charged federally, there is a significant need for general deterrence—*i.e.*, for others who aspire to profit from the drug trade to learn that such activity will result in a lengthy sentence if prosecuted in federal court.  In addition, a Guidelines sentence in this case will help protect the public from the defendant, his co-conspirators, and anyone else deterred by the incarceration of defendants in this case.

*Finally*, a sentence of 60 months' imprisonment or less for this defendant would create a significant and unwarranted disparity between his sentence and the sentences already imposed on other defendants in this case.  The defendant's 23 prior arrests outnumbers Padilla's 18 prior arrests and Hudson's 22 prior arrests.[1]  The defendant's ten prior convictions outnumbers Padilla's four prior convictions and Hudson's eight prior convictions.  The defendant's five convictions related to drug dealing and two convictions for assault far exceed Padilla's three drug-related convictions and Hudson's one conviction for marijuana possession (and two for possession of a weapon).  The defendant's prior sentences of incarceration totaling more than four years far exceed Padilla's five days' imprisonment and Hudson's one year and twelve days of imprisonment.  By any measure, the defendant is a more serious offender than either of these co-defendants, and his sentence should reflect as much.

---

[1] Cooper is not an appropriate comparator based on his role in the conspiracy.

December 26, 2019
Page 5

**IV.     Conclusion**

  For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 78 to 97 months' imprisonment.

            Respectfully submitted,

            GEOFFREY S. BERMAN
            United States Attorney for the
            Southern District of New York

          By: _____
            Frank J. Balsamello / Sarah Krissoff /
             Dominic Gentile
            Assistant United States Attorneys
            (212) 637-2325 / -2232 / -2567

cc:  Irving Cohen, Esq., *counsel for defendant Lamar Griffin* (by ECF)